—— Law Office of ——
**Joshua Black** PLC

Joshua C. Black, #032241
Law Office of Joshua Black, PLC
5055 N. 12th Street, Suite 100
Phoenix, AZ 85014
(623) 738-2225 (p) • (623) 670-5934 (f)
josh@azemploymentlawyer.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HOLSEY, MABELLINE, an individual, | No. 2:16-cv-04078-DJH |
| Plaintiff, | |
| vs. | **AMENDED COMPLAINT** |
| SCOTTSDALE HEALTHCARE HOSPITALS, d/b/a HONORHEALTH, an Arizona Corporation, | |
| Defendant. | |

Plaintiff Mabelline Holsey alleges:

**Nature of Action**

1.     Defendant Scottsdale Healthcare Hospitals d/b/a HonorHealth ("HonorHealth" or "Defendant"), wrongfully permitted its agents and employees to discriminate against and mistreat Plaintiff Mabelline "Bella" Holsey ("Bella").

2.     Throughout her employment with HonorHealth, Bella was subjected to constant harassment by her superiors as well as her co-workers.

3.     Bella exercised reasonable efforts to resolve the constant harassment

4. Despite Bella's efforts, Defendant continued to permit harassment towards Bella.

5. Defendant allowed its agents to create a hostile work environment.

6. Bella put the Defendant on notice of such hostility through numerous complaints but the Defendant chose to take no action to correct any misconduct.

7. Bella was the constant target of racial and prejudicial discrimination by Defendant's agents.

8. Once again, after being informed of such unlawful wrongdoing, Defendant elected to take no action to find an appropriate solution and take disciplinary action.

9. After Bella's injury, she provided notice to her work that she would need certain reasonable accommodations.

10. Defendant failed to make any reasonable attempts to accommodate Bella for her injury, even after being provided with notes from her doctor.

11. Defendant did not make a reasonable attempt to adjust her responsibilities or find a temporary position that could accommodate Bella.

12. Defendant never gave Bella the opportunity to exercise her rights fully and enjoy the privileges and benefits that come along with being a covered employee under the ADA, and other state and federal laws.

13. In light of such actions, Bella seeks to hold Defendant accountable for its intentional wrongdoing and to recover damages incurred as result of its actions.

## Jurisdiction and Parties

14. Plaintiff Bella Holsey resides in Maricopa County, Arizona.

15. Defendant Scottsdale Healthcare Hospitals d/b/a HonorHealth is an Arizona non-profit company with its principle place of business located in Maricopa County, Arizona.

16. Events that took place leading to Bella's claims against Defendant occurred in Maricopa County.

17. The amount in controversy, exclusive of interest and cost, exceed the jurisdictional minimum of this Court.

18. Jurisdiction and venue are proper in this Court.

**Allegations**

19. On or about April 1, 2009, Bella was hired by Defendant as a staff nurse.

20. During her time working for Defendant Bella proved to be an exceptional employee who satisfied all Defendant's duties and expectations.

21. In addition, Bella maintained a professional and cordial relationship with her co-workers.

22. On or about June of 2015, Bella filed a sexual harassment complaint against a fellow co-worker.

23. Shortly thereafter, Bella became the target of discrimination and Harassment.

24. On or about June 28, 2015, after previously being given permission by Ms. Kimzy to arrive a few minutes later to work due to family obligations, Bella was issued a verbal warning for tardiness by her supervisor, Amantha Neilson.

25. No other nurses were given similar warnings and in fact, were permitted to arrive late for their shifts with no repercussions.

26. On or about October 22, 2015, Ms. Kimzy handed Bella a written warning for tardiness while all other nurses continued to arrive late and were never reprimanded.

27. On or about November 20, 2015, Ms. Nielson accused Bella of neglectfully carrying out her duties in an email sent to Ms. Kimzy and Mr. Hanson.

28. Despite Bella's best efforts to refute these accusations, she was placed on leave pending an investigation.

29. After the investigation, Bella was cleared of any wrongdoing.

30. On or about November 30, 2015, Bella met with Ms. Kimzy to request that Ms. Neilson be reprimanded for her false accusations.

31. Ms. Kimzy refused to take any action against Ms. Neilson.

32. Bella Continued to suffered harassment for speaking up against a fellow-employee.

33. Bella also received harassment and disparate treatment due to her race (African-American).

34. The harassment against Bella went as far as to tell her that she was "too dark" to be included in a photo with the rest of the staff, insinuating that the camera was not capable of capturing her image while capturing the image of all of her white coworkers.

35. On or about June of 2015, Bella was diagnosed with a disability.

36. Due to Bella's disability she requested an accommodation to finish her chart at the end of her shift.

37. Her request was accompanied by a physician's note which she presented to both Brenda Kimzy (Director of Clinical Services), and Scott Hanson (Director of Employee Relations).

38. No accommodation was ever granted.

39. Bella then tried to set up an appointment with Mr. Hanson.

40. Mr. Hanson never met with Bella to discuss the harassment and failure to accommodate her.

41. On or about December 13, 2015, Bella was assigned to work with an assistant to move a patient.

42. Bella gave the assistant detailed instructions on how to move the patient

43. The assistant intentionally failed to follow Bella's instructions which resulted in Bella injuring her back and shoulder.

44. Immediately after the injury, Bella reported the incident to her supervisor.

45. Bella was experiencing so much pain because of the injury she requested from her supervisor to leave early.

46. Bella was denied her request to leave early, despite having enough staff members on staff to cover her duties.

47. Bella further filed a complaint with Ms. Kimzy about the assistant but no disciplinary action was taken.

48. Bella continued working but requested a more sympathetic daily assignment that would accommodate her injury and not be so physically taxing.

49. Defendants refused to grant this request.

50. On or about December 15, 2015, Bella filed a workers' compensation claim.

51. On or about December 16, 2015, once again Bella requested less grueling assignments to accommodate her injury, however, that request was once again denied.

52. On or about March 29, 2016, Bella was authorized FMLA leave.

53. On or about June 20, 2016, Bella was informed by Sharon Faucett (Disability Claims Manager), that her FMLA leave had expired on June 19, 2016.

54. Bella contacted Defendants to request a return to her position with certain physical restrictions.

55. Defendants never responded to Bella's request.

56. On or about August 23, 2016, Bella had no other alternative but to take further leave under Defendant's leave of absence policy.

57. On or about September 23, 2016, Ms. Faucett notified Bella that her position was filled while she was on leave and informed her that she had 30 days to find another position with HonorHealth or agree to a "voluntary separation."

## Procedural Requirements

58. Bella has satisfied all procedural requirements prior to commencing this action.

59. Bella filed a charge against HonorHealth with the Office of the Arizona Attorney General on March 21, 2016.

60. The Office of the Arizona Attorney General issued a right to sue letter to Bella, which was received August 29, 2016.

61. Bella filed a charge against HonorHealth with the Phoenix District Office of the U.S. Equal Employment Opportunity Commission (the "EEOC") on March 21, 2016, alleging discrimination, disparate treatment and hostile work environment under Title VII and ACRA, and failure to provide a reasonable accommodation under the ADA.

62. The EEOC issued a Dismissal and Notice of Rights letter, which provided that a lawsuit must be filed within 90 days of receipt of the notice. This notice was delivered by regular postal mail, dated January 31, 2017.

63. Bella timely files this action.

## COUNT I
## Violation of American's with Disabilities Act ("ADA")

64. Bella realleges the proceeding allegations.

65. Bella had an existing disability which qualified her for protection under the ADA.

66. Bella informed HonorHealth of this disability which compels it to collaborate with Bella in an effort to find some reasonable accommodation.

67. Instead, HonorHealth chose to ignore Bella's request and therefore failed to fulfill a duty imposed on it under the ADA.

68. As a direct and proximate result of HonorHealth's violation of the ADA requirements, Bella has suffered substantial damages in an amount to be proven at trial.

## COUNT II
### Violation of Title VII and ACRA – Hostile Work Environment

69. Bella realleges the proceeding allegations.

70. Bella was the constant target of unlawful harassment by HonorHealth's agents.

71. Initially, HonorHealth's agents gave Bella permission to arrive late for her shift due to family obligations.

72. Bella later received a verbal and written warning about her tardiness while other nurses on staff continued to arrive late and without consequence.

73. Bella was also unfairly accused of negligence in an attempt to be place her under constant ridicule and persecution.

74. Despite Bella's efforts to seek out supervisors at HonorHealth to resolve such conduct, HonorHealth made no attempt to find a resolution, allowing its agents free exercise to create a hostile and discriminatory work environment for Bella.

## COUNT III
### Violation of Title VII and ACRA – Disparate Treatment

75. Bella realleges the proceeding allegations.

76. Bella (an African-American) was given permission to arrive late for her shift because of family obligations.

77. Bella later received a verbal and written warning about her tardiness.

78. The other nurses (White) were permitted to arrive late by HonorHealth's agents without repercussion.

79. HonorHealth's agents also allowed other staff members to disrespect and undermine Bella's instructions necessary to perform her job properly.

80. Bella was told by HonorHealth's agents that her face was too dark, due to her race (African-American) to be in a photograph with the rest of the staff.

81. As an African-American woman, Bella is a member of a protected class.

82. Consequently, Bella experienced adverse employment action while other staff members outside her class were treated more favorably.

## COUNT IV
## Disparate Treatment Under Section 1981

83. Bella incorporates by reference the preceding allegations as though fully contained herein.

84. HonorHealth subjected Bella to harassment which was motivated by Bella's race.

85. While posing with other employees for a photograph for HonorHealth Bella was told by HonorHealth that she should not stand in the picture because she was too "dark."

86. Bella was the only African-American in the group and was singled out by HonorHealth and mistreated because of her race.

87. Bella suffered disparate treatment by her managers, when she asked to come in a few minutes late for a family emergency but later was given a verbal warning by her supervisor for tardiness.

88. No other non African-American nurses were similarly reprimanded for tardiness due to a family emergency.

89. Ms. Nielson accused Bella of neglectfully carrying out her duties in an email sent to Ms. Kimzy and Mr. Hanson.

90. Despite Bella's best efforts to refute these accusations, she was placed on leave pending an investigation, however, no other nurses were reprimanded in such a way.

91. Bella reported being injured at work to her supervisor who denied Bella the right to go home, even though there was enough staff to cover the shift.

92. HonorHealth created a hostile and abusive work environment by mistreating Bella due to her race and constantly treated her differently than the non African-American nurses.

93. The conduct by HonorHealth was so severe that a reasonable person in Bella's position would find HonorHealth as an abusive and hostile work environment.

94. HonorHealth's conduct was motivated by the fact that Bella is African-American.

**Prayer for Relief**

Bella demands relief as follows:

- For compensatory damages in an amount to be proven at trial;
- For attorneys' fees and costs under applicable state and federal statues including 42 U.S.C.A § 1988;
- For pre and post-judgment interest on the awarded sum at the highest rate permitted by law;

- For actual and special damages in an amount to be determined at trial;
- For exemplary damages in an amount to be determined at trial;
- For punitive damages in an amount to be determined at trial; and
- For such other relief as this Court deems just and proper to provide Bella with a complete recovery.

RESPECTFULLY SUBMITTED this 9th day of February, 2017.

*Law Office of Joshua Black, PLC*

By: */s/ Joshua C. Black*
Joshua C. Black
5055 N. 12th Street, Suite 100
Phoenix, AZ 85014
*Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify that on the 9th day of February, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and mailed and emailed a copy to the following recipient:

Stacy M. Gabriel
GABRIEL & ASHWORTH, PLLC
10105 E. Via Linda
Suite 103, No. 392
Scottsdale, Arizona 85258
stacy@gabrielashworth.com


by: */s/ Joshua C. Black*